MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANSPORTATION INSURANCE CO., et al. | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 09-CV-7193 |
| vs. | )<br>) Magistrate Judge Arlander Keys |
| ISLAND FOOD STORES, LTD. | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiffs Transportation Insurance Co. and Transcontinental Insurance Co. ("CNA")'s Motion for Summary Judgment. CNA sued Island Food Stores Ltd. ("Island Foods") for breach of a settlement agreement. Island Foods denies that such an agreement exists. For the reasons set forth below, CNA's Motion is Granted.

### Background Facts

In 1998, CNA issued certain policies of workers' compensation and general liability insurance to Island Foods. To fund the premiums for these policies, CNA and Island Foods entered into Finance Agreements, which detailed a retrospective premium plan. Under the retrospective premium plan, Island Foods agreed to pay CNA estimated premiums, which were based on the retention, premium tax, excess loss premium, if any, and the nonratable elements and regulatory assessments and amendments. At the end of the policy term, CNA would conduct an audit to

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRANSPORTATION INSURANCE CO.,  )
et al.                         )
                               )
     Plaintiffs,               )    No. 09-CV-7193
                               )
vs.                            )    Magistrate Judge Arlander Keys
                               )
ISLAND FOOD STORES, LTD.       )
                               )
     Defendant.                )

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiffs Transportation Insurance Co. and Transcontinental Insurance Co. ("CNA")'s Motion for Summary Judgment. CNA sued Island Food Stores Ltd. ("Island Foods") for breach of a settlement agreement. Island Foods denies that such an agreement exists. For the reasons set forth below, CNA's Motion is Granted.

**Background Facts**

In 1998, CNA issued certain policies of workers' compensation and general liability insurance to Island Foods. To fund the premiums for these policies, CNA and Island Foods entered into Finance Agreements, which detailed a retrospective premium plan. Under the retrospective premium plan, Island Foods agreed to pay CNA estimated premiums, which were based on the retention, premium tax, excess loss premium, if any, and the nonratable elements and regulatory assessments and amendments. At the end of the policy term, CNA would conduct an audit to

determine the actual premium owed; if the audit revealed that Island Foods owed more money, then Island Foods would be liable for additional premiums, but if Island Foods owed less money, CNA would pay a refund.

In 2004, after the end of the policies' terms, Island Foods began contesting CNA's billings. CNA and Island Foods began negotiations to resolve the billing dispute. In an email dated April 2, 2004, Island Foods informed CNA that Bill Rosselle, of Rosselle Consulting Inc.[1], was authorized to communicate with CNA on behalf of Island Foods regarding insurance matters. *See* EX. D to Pls' Request for Admissions Deemed Admitted.

The parties engaged in protracted negotiations to resolve the billing dispute. By 2008, CNA claimed that Island Foods owed CNA $244,702.34 for past due premiums. One of the sticking points in the parties' negotiations was Island Foods' insistence on auditing CNA's files. On August 20, 2008, Mr. Rosselle emailed Mark Hayden of CNA to inform him that Island Foods had agreed to drop its demand to audit CNA's files.

Negotiations continued, and Island Foods conveyed a settlement offer to CNA, which was summarized by CNA in an email dated September 5, 2008. Specifically, Mark Hayden of CNA wrote:

---

[1]This April 2, 2004 email, sent by Island Foods' Chief Financial Officer Ronald E, Snith, also authorized Tim Rosselle of Rosselle Consulting to communicate with CNA on Island Foods' behalf.

2

> Bill,
> Thank you for confirming Island Foods' settlement offer of September 5, 2008 as follows:
> $128,000 total payment for past due items.
> No file audit by internal or external parties regarding evaluation of past due amounts.
> CNA waives interest to date.
> Interest commencing on October 1, 2008 at 7% compounded daily on the outstanding balance.
> 17 Monthly payments of $7,500 per month beginning on October 1, 2008 (final payment for remaining balance due on March 2010).
> CNA accepts Island Foods' offer and we will provide settlement documents to you next week. We appreciate your help in getting this matter resolved amicably.
> Mark

Pls. Ex. C to Pls. Rule 56 Statement of Facts. On September 8, 2008, Craig Barnthouse stated that he was "fine" with the terms of the settlement offer set forth in Mark Hayden's September 5th email, except that he believed the interest should be computed monthly, not daily. On that same day, Mark Hayden accepted Craig Barnthouse's proposal, via email, as to the treatment of interest under the written agreement. In that September 8th email, Mark Hayden wrote to Bill Rosselle: "Thank you for sending Island Foods' acceptance of the settlement agreement. We will modify the terms to state that the interest will compound monthly and not daily. I will draft up a release for Island Foods' review. Mark" Pls. Ex. C to Pls. Rule 56 Statement of Facts.

### Procedural History

On November 16, 2009, CNA filed their Complaint against Island Foods, alleging that Island Foods had breached the

settlement agreement negotiated and executed by the parties in a series of emails exchanged in the late summer of 2008. Island Foods filed its Answer to the Complaint on February 4, 2010, admitting, among other things, that the email communications between the parties were authentic and that Island Foods had not made any payments to CNA. On February 25, 2010, the parties consented to the exercise of jurisdiction by a Magistrate Judge, and the case was subsequently assigned to this Court.

During the course of discovery, CNA served its Request for Admissions on Island Foods, which Island Foods answered, in many instances, equivocally or in a manner inconsistent with its Answer. The Federal Rules of Civil Procedure frown upon such conduct, and on September 22, 2010, this Court entered an Order deeming as admitted Plaintiffs' Requests for Admissions Nos. 1, 2, 3, 4, 6, 7, 8, 9 ,10 and 11. *See Transportation Insurance Co. v. Island Food Stores, LTD*, No. 09-CV-7193, Court's Order of September 22, 2010. As a result, the Court deemed as admitted the following facts: 1) Mark Hayden's September 5, 2008 email summarized Island's counter offer to CNA; 2) Craig Barnthouse's September 8, 2008 email stated that he was "fine" with the settlement terms outlined in the September 5th email, with the lone exception that interest be compounded monthly, not daily; 3) Mark Hayden accepted Craig Barnthouse's proposal as to the treatment of interest under the written agreement on September 8,

2008; and 4) Craig Barnthouse never informed Mark Hayden or anyone at CNA of any limitation in Bill Rosselle's authority to communicate Island's acceptance of the terms outlined in the September 5th email.

On November 3, 2010, CNA filed the present motion for Summary Judgment.

## Standards

Summary judgment will be granted where the pleadings and supporting documents show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P 56©; *Lewis v. City of Chicago et al*, 496 F.3d 645, 650 (7th Cir. 2007). Whether a fact is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as to one of these material facts exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

At this juncture, it is not the role of the Court to make "credibility determinations nor choose between competing inferences." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993); *See also Paz v. Wauconda Healthcare and Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006). However, in determining whether a genuine issue of material fact exists, the Court will view the facts in the light most favorable to the

non-moving party and draw all reasonable inferences in the non-moving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party initially bears the burden of showing that no genuine issue of material fact exists in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1985). If the moving party meets its burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial, and the non-moving party "may not rest upon the mere allegations or denials . . . ." *Anderson*, 477 U.S. at 257.

The Court will disregard all facts not properly supported by the record. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir.2000)(the Court will "limit its analysis of the facts . . . to evidence that is properly identified and supported in the parties' [Rule 56 Statements of Fact.]") Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (" Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite to

specific concrete facts establishing the existence of the truth of the matter asserted.")

## Discussion

### I. The Parties' Emails Formed a Binding Settlement Agreement

CNA argues that the parties entered into a settlement agreement when Mark Hayden sent his September 8th email accepting Craig Barnthouse's counter offer. The series of emails exchanged between September 5th and 8th of 2008 establish all of the material terms of the agreement, CNA argues, specifically defining the settlement amount, Island Foods' agreement to forego an audit, CNA's waiver of past interest, the method of calculating future interest, and the amount of the monthly payments. CNA further asserts that, under the terms of this agreement, CNA is owed $128,000 plus accrued interest compounded monthly for a total due of $141,332.32, as of November of 2010.

Island Foods argues[2] that the emails upon which CNA relies do not comprise a binding and enforceable contract, because they were incomplete. Critically absent from these emails, Island Foods argues, is the resolution of the scope of the parties' releases, which were material to the settlement. CNA denies that

---

[2] The parties squabble over whether Mr. Rosselle had the authority to bind Island Foods. The Court need not resolve the dispute, however, as CNA relies upon Mr. Barnthouse's September 8th email as a counter offer, which Mr. Hayden then accepted, to form the basis for the settlement agreement. The scope of Mr. Rosselle's authority is, therefore, immaterial.

the releases were a material element of the parties' negotiations.

"A motion to enforce a settlement agreement is essentially the same as a motion to enforce a contract." *Allstate Fin. Corp. v. Util. Trailer of Ill., Inc.*, 936 F. Supp. 525, 528 (N.D. Ill. 1996)(citing *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989); *Herron v. City of Chicago*, 618 F. Supp. 1405, 1409 (N.D. Ill. 1985)). Consequently, enforceability of a settlement agreement is governed by local contract law. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999)(citing *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)).

Illinois courts recognize that "email exchanges can constitute a binding agreement." *See Todd, Jr. v. Kohl's Dept. Store*, 08 C 3872, 2010 WL 3720265 at *1(N.D. Ill. Sept. 15, 2010) (discussing Illinois law). Though the law requires a meeting of the minds as to all material terms, *Abbott Labs.*, 164 F.3d at 387, "settlement agreements that do not explicitly resolve ancillary issues can nonetheless be enforceable." *Porter v. Chicago Bd. Of Educ.*, 981 F. Supp. 1129, 1131 n. 4 (N.D. Ill. 1997)(citing *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997)). "The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* (quoting *Worthy*

*v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985)).

The issue in this case is whether Island Foods has presented evidence sufficient to raise an inference that the releases--which were only casually referenced in the emails that formed the basis for the settlement agreement that CNA argues exists- were a material term of an agreement between the parties. Island Foods offers the affidavit of its insurance consultant, Bill Rosselle, in support of its claim that the email exchanges relied upon by CNA were incomplete, and that the releases were, in fact, material. In his affidavit, Mr. Rosselle states that he informed CNA that "the parties would need to reach agreement on the scope and character of any releases which might be part of an eventual settlement agreement before [Island Foods] would agree to waive its right to an audit" and that "any agreement regarding the financial aspects of the settlement and the waiver of an audit would be conditioned upon the parties reaching agreement on the terms of releases." Def.'s Ex. A. ¶ 9.

However, even accepting Mr. Rosselle's affidavit as true, as the Court must for purposes of this Motion, the fact that Mr. Rosselle may have informed CNA of the significance of the releases at some point during the long and protracted negotiations is irrelevant; the evidence overwhelmingly demonstrates that Island Foods agreed to settle the matter, without first resolving the scope of the release(s). While Mr.

9

Rosselle may have informed CNA, at some point during the parties' four years of negotiating[3], that the resolution of the releases was critical, the objective evidence shows that the parties settled the dispute without hammering out the details regarding the releases. Mr. Hayden's emails repeatedly labelled the parties' proposals as settlement offers, acceptances and counter offers; Mr. Rosselle's email to Craig Barnthouse forwarding Mr. Hayden's September 5th email also labels Island Foods' proposal a settlement offer; and Mr. Barnthouse acknowledges as much in his email responding to Mr. Rosselle, stating that, with the exception of the manner in which interest is computed, Island Foods is "fine with the settlement." See Tab 4, Ex. A to Plfs' Mot. For S.J., Emails of September 8, 2008.

At best, Mr Rosselle's affidavit raises the inference that Island Foods did not intend to settle until the releases were fully negotiated, but Island Foods' subjective intent cannot derail the impact of its objective statements. "[W]hether the parties had a 'meeting of the minds' is determined not by their actual subjective intent, as in their actual mental processes,

---

[3] Notably, the evidence also clearly shows that Island Foods abandoned other issues that it once deemed imperative to settlement, such as its insistence upon an audit. See Ex. C to Pls' Request For Admissions Deemed Admitted, Aug. 20, 2008 email from Bill Rosselle to Mark Hayden (and copying Craig Barnthouse) noting that, while Mr. Barnthouse felt strongly about an audit, "Craig has agreed to a counter-offer that does not include the audit."

10

but by what they expressed to each other." *Robin v. Robin,* 2004 WL 170318, at *5 (N.D. Il.. Jan. 21, 2004). The evidence of the parties' objective intent permits only the inference that the emails of September 2008 settled the parties' billing dispute.

Island Foods also points to the emails themselves, particularly Mark Hayden's September 8th email, which states "Thank you for sending Island Foods' acceptance of the settlement agreement. We will modify the terms to state that the interest will compound monthly and not daily. I will draft up a release for Island Foods' review." The Court disagrees that Mr. Hayden's reference to drafting up a release for Island Foods' review renders the releases a material term of any settlement agreement between the parties. To the contrary, in his email, Mr. Hayden first notes that Island Foods has already accepted the terms of the settlement agreement; the later reference to the draft of a release suggests only that the release was ancillary to the underlying settlement agreement. The fact that the Parties' attorneys had not yet worked out the verbage of the written settlement agreement or the particulars of the releases does not undermine the existence of the underlying contract. *See Todd, Jr.,* 2010 WL 3720265 (finding that the parties accepted the terms of the agreement orally and that subsequent squabbles over written terms would not derail the settlement.) Illinois courts have repeatedly held that "a contract may be enforced even though

11

some contract terms may be missing or left to be agreed upon." *Academy Chicago Publishers v. Cheever*, 144 Ill.2d 24, 578 N.E.2d 981, 984 (Ill.1991). *See also, Dawson v. General Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992)("Illinois courts have not been shy about enforcing promises made in the context of ongoing negotiations and often involving preliminary or 'incomplete' agreements.")

Finally, Island Foods cannot avoid the impact of the Court's order granting Plaintiffs' Motion to Have Plaintiffs' Request for Admissions Deemed Admitted. Following the Court's Order, Island Foods has admitted that Mark Hayden's September 5th email summarized Island Foods' counteroffer of settlement, and that Mark Hayden subsequently accepted that offer. Mr. Rosselle's affidavit is insufficient to raise an inference to defeat the impact of such admissions, particularly where Island Foods has repeatedly argued that Mr. Rosselle lacked the authority to bind Island Foods. *See, e.g.,* Def.'s Resp. at 1-2 ("[Island Foods] has maintained three main factual points in its defense . . . 3) the email upon which Plaintiffs rely as [Island Foods'] acceptance of any purported settlement was sent to Plaintiffs by an individual who lacked the capacity to bind [Island Foods.]"

The Court, therefore, finds that Island Foods' evidence fails to raise a genuine issue of material fact as to whether the

parties entered into a binding settlement agreement, despite the lack of specifics regarding the release(s), and that Summary Judgment in favor of CNA is appropriate.

## II. Attorneys' Fees

CNA argues that, because the Finance Agreements between the Parties contemplated an award of attorneys' fees, CNA is entitled to collect its attorney's fees incurred in this matter. The Court disagrees. The Finance Agreements are not at issue in this case; CNA chose to file suit to enforce the settlement agreement, as evidenced by the above referenced emails. The emails clearly contemplate a resolution of all of the parties' disputes, without mention of attorney's fees. As such, the Court denies CNA's Motion or Summary Judgement with regard to its entitlement to Attorney's Fees in this matter.

## Conclusion

For the reasons explained above, the Court Grants, in part, CNA's Motion for Summary Judgment, and awards CNA $141,332.32, plus the interest accumulated since the filing of CNA's Corrected Motion for Summary Judgment on October 29, 2010. The Court denies CNA's Motion for Summary Judgment with regard to its entitlement to attorney's fees.


Date: January 20, 2011          ENTER:


*[signature]*
ARLANDER KEYS
United States Magistrate Judge